USDC SCAN INDEX SHEET

















JAH    6/20/05    9:16

3:04-CR-01000   USA V. LE

*146*

*CRMEMSUP.*

FILED

05 JUN 17 PM 2:03

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

Stephen R. Brodsky, SBN 137848
Attorney at Law
1010 Second Avenue, Suite 2300
San Diego, CA 92101
(619) 231-2151

Attorney for Defendant, JAMES HOA LE

1
2
3
4

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

5
6
7

| | |
|---|---|
| UNITED STATES OF AMERICA | )  Case No.:  04cr1000-IEG |
| | ) |
| Plaintiff, | )  **MEMORANDUM OF POINTS AND** |
| | )  **AUTHORITIES IN SUPPORT OF** |
| vs. | )  **MOTION TO SUPPRESS ELECTRONIC** |
| | )  **SURVEILLANCE EVIDENCE** |
| JAMES HOA LE, | ) |
| | ) |
| Defendant | ) |
| | ) |
| | ) |
| | ) |

8
9
10
11
12
13
14

Defendant JAMES HOE LE by and through his attorney STEPHEN R. BRODSKY, respectfully submits the following memorandum of points and authorities in support of his motion to suppress illegally obtained electronic surveillance evidence.

## I.

## STATEMENT OF THE CASE

The defendant has been charged in an indictment with conspiracy to distribute a controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1). The defendant entered a plea of not guilty at arraignment on July 1, 2004.  The case is currently set for a hearing on defense motions on August 8, 2005.

///

///

15
16
17
18
19
20
21
22
23
24
25



## II.

### STATEMENT OF FACTS

The following statement of facts is based on information in the complaint, indictment, and discovery provided to date by the United States Attorney's Office. Other than indicated, defendant JAMES HOA LE does not accept or adopt any part of the statement of facts which may be subject to contradiction, enlargement or retraction through evidentiary findings at hearings and trial.

In the superseding indictment filed on June 25, 2004, the government alleges that co-defendant Dat Le was a large-scale distributor of Ecstasy in San Diego County. It is further alleged that co-defendants Eliyahu Marciano and Yitshak Siso, residents of Los Angeles, supplied Dat Le with large quantities of Ecstasy tablets to sell. Tuan Huy Do, a.k.a. Jerry, who is charged in a previous indictment and is now a cooperating witness for the government, is alleged to have been the "runner" who picked up and delivered Ecstasy tablets and money for Dat Le. It is alleged that James Hoa Le (hereinafter "James"), cousin of Dat Le, recruited Tuan Do as a runner and resided at a "stash house" where large quantities of Ecstasy tablets were stored.

The indictment charges that between December of 2001 and April of 2004, the afore-mentioned co-defendants, along with co-defendants Armando Carmona, Asher Benedict Lord, Hector Vincent Melero, and Dung Quoc Bui, conspired to distribute thousands of Ecstasy tablets, and that a part of the conspiracy was that James maintained a "stash house" where the Ecstasy was kept in San Diego County.

### II.
### THE WIRETAP APPLICATION FAILED TO COMPLY WITH THE REQUIREMENTS OF 18 U.S.C. § 2510, *ET SEQ.*

Title 18, United States Code, sections 2510, *et seq.*, is a statutory effort to balance the need for electronic surveillance in certain types of investigations against the obvious privacy

04cr1000

infringements inherent in such surveillance.  *United States v. Giordano*, 416 U.S. 505, 526-527 (1974).

Title 18, United States Code, sections 2510, *et seq.*, permits an application for electronic surveillance to a court only upon compliance by the government with stringent requirements and review at the highest levels of the Department of Justice.  Although law enforcement agents may sometimes chafe at some of these requirements, the Ninth Circuit has correctly observed that, "[t]he restraint with which such authority was created reflects the legitimate fears with which a free society entertains the use of electronic surveillance."  *United States v. Kalustian*, 529 F.2d 585, 588 (9th Cir. 1976).

Here, it is submitted that the application as well as the extensions did not conform to the requirements of 18 U.S.C. § 2510, *et seq.*, by not making the requisite showing that electronic surveillance was necessary.

A.    The "Necessity Requirement"

Title 18, United States Code, section 2518(1)(c) provides that each application for an order authorizing the interception of wire communications shall include:

> a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

This statute has been interpreted to mean that more than just boilerplate phrases will be necessary to satisfy this requirement.  "Such a showing must allege specific circumstances which render normal investigative techniques particularly ineffective or the application must be denied."  *United States v. Ippolito*, 774 F.2d 1482, 1486 (9th Cir. 1985).  "Mere conclusions by the affiant are insufficient to justify . . . a wiretap order."  *Kalustian*, 529 F.2d at 590.

Title 18, United States Code, Section 2518(3)(c) provides that in issuing an order authorizing the interception of wire communications, the judge must determine whether:

04cr1000

normal investigative procedures have been tried and have failed or
reasonably appear to be unlikely to succeed if tried or to be too
dangerous.

Section 2518 (1)(c) and (3)(c) together make up the so-called "necessity requirement" for granting a wiretap order. *Ippolito*, 774 F.2d at 1485. These two provisions make clear Congress' intent that wiretap procedures are not to be routinely employed as the initial step in criminal investigations. *United States v. Carneiro*, 861 F.2d 1171, 1176 (9th Cir. 1988); *Giordano*, 416 U.S. at 515. In fact, "the statute expressly requires the district court to determine whether the wiretap application contains facts to support a finding that 'normal investigative procedures have been tried and failed or appear to be unlikely to succeed if tried or to be too dangerous.'" *Carneiro*, 861 F.2d at 1176; *Ippolito*, 774 F.2d at 1485.

The purpose of the "necessity requirement" is to insure that "wiretapping is not resorted to in a situation where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n. 12 (1974). The high degree of importance of § 2518(1)(c) in the overall regulatory scheme of electronic surveillance is apparent if one recalls that the central reasons that Congress permits electronic surveillance is that it is a *necessary* tool for law enforcement. *See Dalia v. United States*, 441 U.S. 238, 250 (1979) ("The plain effect of the detailed restrictions of § 2518 is to guarantee that wiretapping or bugging occurs only when there is a genuine need for it and only to the extent it is needed.") Therefore, particularly close judicial scrutiny is required in this area. *Kalustian*, 529 F.2d at 589-90; *see also, United States v. Williams*, 580 F.2d 758 (D.C. Cir. 1978).

In order for a court to find that alternative methods have been tried or would not have succeeded, the court must closely examine the affidavit filed in support of the application for authorization to employ a wiretap. The district court, in addition to determining whether the statutory requirements were met, must also examine the application to see if it contains material misstatements or omissions regarding the necessity of the wiretap. *Carneiro*, 861 F.2d at 1176.

///

04cr1000

The Ninth Circuit has stated:

> To show that "other investigative procedures have been tried and failed" the affidavit must reveal that normal investigative techniques have been employed in a good faith effort to determine the identity of those violating the law and to assemble sufficient evidence to justify their prosecution and that these efforts have failed to achieve their ends. The good faith effort need not have exhausted all possible uses of ordinary techniques. *What is required is a showing that in the particular investigation normal investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time.*

*United States v. Spagnuolo*, 549 F.2d 705, 710 (9th Cir. 1977) (fn. omitted).

The Ninth Circuit Court of Appeals in *Carneiro* summarized the necessity requirement and its purpose:

> A district court must reject a wiretap application if law enforcement officers have not first attempted, without success, traditional investigative methods that "easily suggest themselves and are potentially productive and not unduly dangerous." *United States v. Ippolito*, 774 F.2d 1482, 1486 (9th Cir. 1985). Taken together, §§ 2518(1)(c) and (3)(c) require a showing of necessity before a district court can issue a wiretap order. *Id.* at 1485. The purpose of the necessity requirement is to ensure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime. *United States v. Kahn*, 414 U.S. 143, 153 n. 12 (1974).

*Carneiro*, 861 F.2d at 1176.

In other words, the government must show, in its affidavit, why normal investigative techniques will not work in that particular case. Furthermore, "[e]ach wiretap application, standing alone, must satisfy the necessity requirement." *Id.* The government, in each wiretap application, must "identify *specific* circumstances indicating that traditional techniques cannot reveal the broader picture." *Simpson*, 813 F.2d at 1472 (emphasis in original). As noted in *Ippolito*, the court must be careful not to permit the government merely to characterize the case as a "drug conspiracy" . . . that is therefore inherently difficult to investigate. The affidavit must

show with specificity why in *this particular investigation* ordinary means of investigation will fail. *Id.* (italics in original); *see also Simpson*, 813 F.2d at 1472.

Conclusory statements by themselves are not sufficient, *United States v. Brone*, 792 F.2d 1504 (9th Cir. 1986), and the government may not avoid specificity in its wiretap application affidavits by "making general allegations about classes of cases." *Ippolito*, 774 F.2d at 1486. "Bald conclusory statements without factual support are not enough." *United States v. Martinez*, 588 F.2d 1227, 1231 (9th Cir. 1978). The specificity requirement "is to prevent the government from making general allegations about classes of cases and thereby sidestepping the requirement that there be necessity in the particular investigation in which a wiretap is sought." *Ippolito*, 774 F.2d at 1486. Although the government is not required to exhaust every investigative alternative, *Brone*, 792 F.2d at 1506, it must show specifically how or why normal investigatory techniques did not or would not work in this particular investigation. *United States v. Spagnuolo*, 549 F.2d 705, 710 (9th Cir. 1977); *Kalustian*, 529 F.2d at 590.

B.    When a *Franks* Hearing is Required

The federal constitutional standards regarding willfully or recklessly false statements or omissions in affidavits is set forth in *Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks* the Supreme court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155-56.

The *Franks* court held that the reviewing court should set aside the affidavit's false statements aside and then determine whether the affidavit's remaining content is still sufficient to

04cr1000

establish probable cause. If the affidavit is insufficient, the warrant must be voided and the fruits of the warrant suppressed. *Id.* at 156.

The rationale for this holding is that deliberate, misleading statements or omissions in an affidavit prevents the magistrate from adequately determining the existence of probable cause with the requisite judicial neutrality. The rationale for voiding a warrant (and by analogy, an intercept application, affidavit and order) when material misstatements or omissions are made which affect the probable cause determination is logical since the misinformation or the lack of information can constitute material misrepresentations.

> By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all meaning.

*United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985); *see also, Ippolito*, 774 F.2d at 1485.

In *United States v. Ippolito*, 774 F.2d 1482, 1484-85 (9th Cir. 1985) the Ninth Circuit stated that *Franks* emphasized the importance of truthful information to the neutral detached magistrate and that its reasoning applies in the context of wiretap orders. The necessity showing and finding are thus subject to *Franks*. 774 F.2d at p. 1485.

The Ninth Circuit has held that "clear proof" of a deliberate or reckless omission is not required, *Stanert*, 762 F.2d at 781, because such proof is reserved for the evidentiary hearing. All that is required is that the defendant makes a substantial showing that the affiant intentionally or recklessly made misstatements or omitted facts to either make false statements or make technically true statements in the affidavit misleading.    *Id.* at 782. The effect of all misrepresentations and omission must be assessed in a cumulative fashion when determining whether necessity exists without the misrepresentations. See *id.* at 782.

The Ninth Circuit has overturned wiretap orders where it has found the requisite necessity lacking. In *United States v. Ippolito*, 774 F.2d 1482 (9th Cir. 1985), the Court rejected the government's claim the wiretapping was necessary to discover the identities of unknown co-

04cr1000

1   conspirators when, in fact, an informant was both willing to testify and had great potential for

2   uncovering the entirety of the conspiracy under investigation.  *Id.* at 1486-87.  In *Ippolito* the

3   Court declared:

4           Although the government need not pursue every alternative
        means of investigation, neither should it be able to ignore avenues
5       of investigation that appear both fruitful and cost-effective.  It is
        not unreasonable to expect the government to utilize those methods
6       that appear to be potentially productive.  We would flout the
        statutory intent that wiretaps be used only if necessary, were we to
7       sanction a wiretap simply because the government pursued some
        "normal" investigative strategies that were unproductive, when
8       more fruitful investigative methods were available.  In effect, the
        government would be able to secure a wiretap in every case, even
9       where a normal strategy would be likely to achieve the same result
        without resort to the serious intrusion that a wiretap necessarily
10      entails.

11  774 F.2d at 1486.

12          In *United States v. Simpson*, 813 F.2d 1462, 1471 (9th Cir. 1987), the affidavit in support

13  of a wiretap order stressed the need for wiretapping to identify all of the members of the

14  defendant's suspected narcotics enterprise.  The affidavit claimed that adequate evidence could

15  not be obtained through traditional investigative avenues because the defendant and his co-

16  conspirators "had 'insulated themselves and their high echelon accomplices from all but a small

17  circle of associates' such that 'undercover agents, confidential informants, and witnesses cannot

18  penetrate the organization to the highest levels because of insulation tactics utilized.'"  *Id.*  The

19  affidavit further claimed that a plan by the FBI to set up a drug bust would not "'identify the

20  source and storage place for the heroin, nor the identities of other conspirators.'"  *Id.*

21          The lower court in *Simpson* found the affidavit misleading because it failed to disclose

22  the true depth of an informant's involvement in the defendant's activities and had portrayed the

23  informant as an uninvolved eavesdropper to the defendant's activities, thus obscuring the fact

24  that she was "deeply involved."  *Id.*  The Court of Appeals affirmed and noted that each affidavit

25

04cr1000

must show with specificity why in this particular investigation ordinary means of investigation will fail. *Id.* at 1472. In *Simpson* the specific facts withheld from the issuing judge about the investigation of the defendant revealed that traditional techniques could have led to the successful infiltration of the entire operation. *Id.* at 1472-73.

C.       The Instant Case Requires a *Franks* Hearing

        In the instant case, there exist two informants who were both willing to and did testify before the Grand Jury as to theirs' and others' involvement in the conspiracy. Additionally, both informants had great potential and did uncover several co-conspirators involved in this case.

        Robert Jimenez, an informant "hired" by Agent James Hawksley to help in the investigation of this case, was a cooperating witness at the Grand Jury hearing on November 21, 2003. According to Mr. Jimenez's Grand Jury testimony, he had known defendants Dat Le and Louie Bui for approximately four years prior November 2003. Mr. Jimenez had regular business dealings with Dat Le up until and after the Grand Jury hearing. Additionally, he had met with cooperating witness Tuan Do on several occasions to conduct Ecstacy purchases, and had personal interactions with defendant "Lucky" Marciano several times over a four-year span from 1999 to 2003. Mr. Jimenez made several "controlled purchases and exchanges" with Dat Le and Tuan Do while being observed by Agent James Hawksley as well as several other agents from May 2003 until November 2003. During those transactions and through his personal interactions, Mr. Jimenez discovered that "Lucky" Marciano was the supplier of the Ecstasy tablets to Dat Le. He also learned or believed that "Jay," Dat Le's cousin, was a financier for Dat Le's production.

        Tuan Do was a cooperating witness who testified at the Grand Jury hearing on May 21, 2004. Tuan Do was a "runner" for Dat Le and therefore had many personal dealings with him

04cr1000

and for him.  Tuan Do testified to knowing and conducting illegal purchases and sales of Ecstasy with Dat Le, defendant James Le, "Lucky" Marciano, Robert Jimenez, defendant Hector Vincent Melero, defendant Benedict Asher Lord, and defendant Armando Carmona.   During his testimony, Tuan Do went into great detail as to how transactions were conducted and with whom they were conducted over a specific time period.  Tuan Do did not know that Robert Jimenez was a paid informant.  As a co-conspirator, Tuan Do was able to penetrate the upper echelon of this conspiracy.

The Grand Jury testimony of Robert Jimenez and Tuan Do disclosed major illegal dealings with and the identities of eight of the defendants in this case, each charged with various crimes relating to conspiracy and trafficking of controlled substances.  Therefore, as in *United States v. Ippolito,* 774 F. 2d 1482 (9th Cir. 1985), the informants in this case were both willing to testify and had great potential and knowledge to uncover the entirety of the conspiracy under investigation.  Thus, the wiretapping in this case was unnecessary to discover the identities of unknown co-conspirators, as all defendants' identities were known to Tuan Do and Robert Jimenez and disclosed in their Grand Jury testimony.

Therefore, the government has failed to conform to the necessity requirement as normal investigative procedures were successful in determining the identity of those violating the law and in assembling sufficient evidence to justify their prosecution without the need for a wiretap.  The government failed to show why or how this particular case is different than other drug conspiracy cases that do not require wiretaps, and therefore a *Franks* hearing is required.

///

///

///

04cr1000

1

## IV.

2

## CONCLUSION

3    For the foregoing reasons, defendant JAMES HOA LE, by and through his attorney

4    STEPHEN R. BRODSKY, respectfully requests that this Court hold a *Franks* evidentiary

     hearing and grant his motion to suppress illegally obtained electronic surveillance evidence.
5

6
     Dated:  06/17/05                        Respectfully submitted,
7

8

9                                            STEPHEN R. BRODSKY
                                             ATTORNEY FOR DEFENDANT
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                                              04cr1000